J-A09038-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                             :            PENNSYLVANIA
                                               :
                v.                                  :
                                               :
                                               :
MALACHI JACKSON                      :
                                               :
                Appellant                    :     No. 896 WDA 2025

Appeal from the Judgment of Sentence Entered June 27, 2025
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0003814-2024

BEFORE: NICHOLS, J., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:         **FILED: July 21, 2026**

Malachi Jackson ("Jackson") appeals from judgment of sentence, following a bench trial, finding him guilty of two counts of rape, and one count each of aggravated assault, kidnapping, aggravated indecent assault, strangulation, terroristic threats, unlawful restraint, recklessly endangering another person ("REAP"), and false imprisonment.[1]  On appeal, Jackson argues the verdict was against the weight of the evidence.  After careful review, we affirm.

The trial court described the underlying facts as follows:

> The record reflects that [G.E. ("the victim")] and [Jackson] had been in a relationship for several months.  The relationship, which was sexual at times, was of the on and off variety.  On May 23, 2024, the parties were broken up because [Jackson] had been physically and emotionally abusive.  Although [the victim]

---

[1] **See** 18 Pa.C.S.A. §§ 3121(a)(1) and (2), 2702(a)(1), 2901(a); 3125(a)(1), 2718(a), 2701(a), 2902(a), 2705, 2903(a).

communicated with [Jackson] that day, she advised him that she did not want to see him. [The victim] was visiting her neighbor when she heard someone come into the building and enter her apartment. [Jackson] texted her, asking where she was. [The victim] did not want to see [Jackson] so she told him she was at another location, Hailey's house. When [the victim] hear[d] footsteps leaving the building, she went to her apartment.

[The victim] entered her apartment and saw [Jackson] coming out of her bedroom in a rage. Anticipating a physical altercation, [the victim] grabbed a knife. [Jackson] took the knife from [the victim]. [Jackson] then hit [the victim], threw her on the couch, and took her phone. [Jackson] accused [the victim] of sleeping with her neighbor. He hit [the victim] in the face and stomach and threw her on her bed. [Jackson] scrolled through the messages on [the victim's] phone, looking for communications with other men. When [the victim] attempted to call 9-1-1, [Jackson] took the phone from her. [Jackson] continued to follow [the victim] throughout the apartment, hitting her in the face, pulling her hair, and throwing her to the ground.

[Jackson] grabbed [the victim's] car keys and ordered her in the car. While driving to his apartment on the North Side, [Jackson] twice pulled the car over and attempted to shove [the victim] out of the car. When they arrived at [Jackson's] apartment, [Jackson] continued to question [the victim] about other men and hit her face. [The victim] went upstairs to get away, but [Jackson] followed her, grabbed her by her hair and banged her head on the floor over fifteen times. [Jackson] stripped off [the victim's] clothes and attempted to throw her outside. At one point during the struggle, he placed his hands around her neck and covered her mouth and nose, suffocating her.

Eventually, [Jackson] forced [the victim] down the stairs. He threw her outside naked and closed the door. [The victim] screamed for help but no one responded. [Jackson] grabbed [the victim], told her to stop screaming and brought her back inside. Once inside the house, [the victim] ran to the third floor to try and get away from [Jackson]. [Jackson] continued hitting [the victim,], knocking her to the ground. He pointed a gun at her, threatened to kill her and her entire family.

> [The victim] started to vomit. [Jackson] ordered her to perform oral sex. When she refused, [Jackson] started touching her vagina. [Jackson] grabbed [the victim's] hands and put her arms down. He got on top of her and inserted his penis into her vagina. Although she told him to stop, he continued until he ejaculated. [The victim] fell asleep and was awakened by [Jackson] forcing her to have sex a second time.
>
> [Jackson] called Nicky Stritzinger [("Stritzinger")] to drive [the victim] home. The following morning, Nicky and [Jackson] drove [the victim] back to her apartment. Upon arrival, she contacted her mother. The police were called and she went to the hospital.

Trial Court Opinion, 8/27/25, at 2-3 (unnumbered).

Following a February 2025 bench trial, the trial court found Jackson guilty of the above-listed offenses. Jackson filed a pre-sentence motion for reconsideration of the verdict as against the weight of the evidence. **See** Motion for Reconsideration, 6/25/25, at 1-15 (unnumbered). However, he did not request a new trial; instead, he requested the trial court overturn the verdict. **See id**. at 15. The trial court subsequently sentenced Jackson to an aggregate term of five to ten years of incarceration, followed by three years of probation. **See** Sentencing Order, 6/27/25, at 1-3 (unnumbered). Jackson did not file a post-sentence motion seeking a new trial. Jackson filed a timely notice of appeal.

Jackson raises one question for our review:

Did the trial court abuse its discretion in finding [] Jackson guilty because the verdict went against the weight of the evidence, specifically the inconsistent testimony of [the victim], the testimony and recorded interview of [] Stritzinger, the electronic data extractions, and the medical records introduced at [t]rial?

Jackson's Brief at 2.

Before reaching the merits, we address the Commonwealth's argument that Jackson waived his weight of the evidence claim by filing a pre-sentence motion for reconsideration rather than a post-sentence motion for a new trial. **See** Commonwealth's Brief at 15-19. Pennsylvania Rule of Criminal Procedure 607 provides that "[a] claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial," either orally or written before sentencing, or in a post-sentence motion. Pa.R.Crim.P. 607(A) (1)-(3). The comment to Rule 607 explains "[t]he purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Pa.R.Crim.P. 607 cmt. This Court has likewise explained "[a] challenge to the weight of the evidence must be raised in the trial court through a motion for a new trial." **Commonwealth v. Jackson**, 326 A.3d 474 (Pa. Super. 2024) (unpublished memorandum at *4).[2]

Here, Jackson filed a pre-sentence motion for reconsideration raising a weight claim, and the trial court addressed the claim on the merits. However, Jackson did not request a new trial, as Rule 607 requires. Instead, he requested the trial court overturn the verdict. **See** Motion for Reconsideration, 6/25/25, at 15 (unnumbered). This request was not consistent with the

---

[2] We cite **Jackson** for its persuasive value only. **See** Pa.R.A.P. 126(b).

procedural posture of a weight claim. ***See Commonwealth v. Banniger***, 303 A.3d 1085, 1095 (Pa. Super. 2023). Nevertheless, because Jackson placed the weight issue before the trial court, and because the trial court addressed it, we need not decide whether Jackson's failure to request a new trial results in waiver. Even assuming the issue is preserved, Jackson is not entitled to relief.

Our standard of review is well settled:

The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.

When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.

Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment. Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

***Commonwealth v. Arnold***, 284 A.3d 1262, 1277 (Pa. Super. 2022) (quoting

***Commonwealth v. West***, 937 A.2d 516, 521 (Pa. Super. 2007)).

- 5 -

> Notably, the trial court's role changes in ruling on a post-sentence motion after a non-jury trial. Post-trial, the court cannot re-deliberate[,] as it is no longer the fact finder. Although weight of the evidence claims have been addressed in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that his non-jury decision shocked his own conscience. It would be highly incongruous for a trial judge presiding over a non-jury trial to find his own decision shocks his conscience…. A judge in a non-jury trial has the dual duties of determining the weight and admissibility of evidence. A trial court sitting as fact-finder is unlikely to find, in response to a post-sentence motion, that it reached a verdict contrary to the evidence.

*Banniger*, 303 A.3d at 1095 (internal citations, quotation marks, and brackets omitted).

Jackson argues the verdict was against the weight of the evidence because the victim's testimony was inconsistent and not credible. Jackson emphasizes the victim admitted she lied under oath at the preliminary hearing when she denied consuming drugs or alcohol on the night of the incident. *See* Jackson's Brief at 18-20; *see also* N.T., 2/11/25, at 20-21, 67. Jackson also points to the victim's prior sexual relationship with him, the text messages between them in the days before the incident, the electronic data extraction from the victim's phone, and the medical records. *See* Jackson's Brief at 18-28. Jackson maintains the trial court should have credited Stritzinger's testimony that the victim did not appear afraid, did not accuse Jackson of assault in Stritzinger's presence, did not have visible injuries, and appeared angry or under the influence. *See id*. at 26-27

The record confirms the trial court heard these credibility challenges, considered, and rejected them. *See*, *e.g.*, Trial Court Opinion, 8/25/25, at 5

- 6 -

(stating the victim acknowledged her previous lies but the trial court believed her testimony about the events). Thus, the trial court was fully aware of the inconsistencies and impeachment evidence Jackson now emphasizes on appeal.

Moreover, the trial court also heard the victim's account of the events in detail and credited it. *See id*. at 4-5 (detailing the victim's testimony about the incident and finding the victim credible). We have held that where the finder-of-fact credits the victim's testimony, it is not our place to reweigh the evidence or make new credibility determinations. *See Commonwealth v. Salinas*, 307 A.3d 790, 795 (Pa. Super. 2023).

Moreover, Jackson's complaint that the trial court did not rely on Stritzinger's testimony does not establish an abuse of discretion. Stritzinger testified she was called to Jackson's residence on May 24, 2024, and first encountered the victim around 10:00 a.m. *See* N.T., 2/11/25, at 106-07. She stated the victim was upstairs in Jackson's bed, was naked, appeared angry, and did not appear scared or as though she was trying to get away from Jackson. *See id*. at 107-09. She further averred the victim did not accuse Jackson of assault in her presence and she did not see bruising, cuts, or blood. *See id* at 109. The trial court was free to determine what weight to give Stritzinger's testimony, particularly in light of the fact that Stritzinger did not witness the underlying events described by the victim. *See id*. at 106-10.

Jackson's claim asks this Court to reweigh the evidence and substitute its judgment for that of the trial court. This we cannot do. *See Arnold*, 284 A.3d at 1277. The trial court, sitting as factfinder, was free to credit the victim's testimony and the supporting evidence and not credit Jackson's defense. *See Commonwealth v. Williams*, 302 A.3d 117, 120 (Pa. Super. 2023). Accordingly, Jackson's claim does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

7/21/2026